IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JERRY W. JERGER, JR., #2166458 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv099 |
| | | CONSOLIDATED WITH |
| | § | CIVIL ACTION NO. 6:21cv130 |
| | § | |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Jerry Jerger, an inmate of the Texas Department of Criminal Justice proceeding pro se, filed two petitions for a writ of habeas corpus and paid the filing fees. On April 6, 2021, the Court consolidated the two actions, and they are considered jointly in this Report. (Dkt. #10.) The consolidated action is referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural History

Petitioner was indicted in the 114th District Court in Smith County, Texas for two offenses of manufacture/delivery of a controlled substance in case numbers 114-0553-17 and 114-0577-17.[1] Specifically, the indictment in 114-0553-17 was for possession of methamphetamine on or about February 7, 2017 ("February case"), with intent to deliver and included a presentment that "the defendant used or exhibited a deadly weapon, to-wit: a firearm, during the commission of or immediate

---

[1] Both the state court indictment and Respondent's answer originally refer to that case as 114-0577-17. (Dkt. #20-27 at 5, 16; Dkt. #21 at 2–3.) But elsewhere in the answer and the state record, the case is referenced (apparently erroneously) as 114-0557-17. (Dkt. #20-44 at 1, Dkt. #21 at 3 n.1, 4.) The Court will consistently use the correct state matter number herein.

1

flight from said offense." (Dkt. #20-26 at 6.) The indictment in 114-0577-17 was for possession of methamphetamine on or about January 5, 2017 ("January case"), with intent to deliver and included a presentment that "the defendant used or exhibited a deadly weapon, to-wit: knife, that in the manner and means of its use and intended use was capable of causing death and serious bodily injury, during the commission of or immediate flight from said offense." (Dkt. #20-27 at 5.) After the trial court denied his motions to suppress the evidence against him in both cases (Dkt. #20-26 at 52; Dkt. #20-27 at 40), Petitioner entered an open plea of guilty with no agreement as to punishment in each case, with an acknowledgment that the charges were first degree felonies, one enhancement each, and a written waiver of his trial rights. (Dkt. #20-26 at 68–73; Dkt. #20-27 at 50–55.)

The trial court held a joint plea hearing for both cases on September 11, 2017. (Dkt. #20-37.) Petitioner pleaded guilty to the possession charge in both cases, reserving the right to appeal denial of his suppression motions, but he unexpectedly pleaded "not true" to the deadly weapon allegations. (*Id.* at 18, 22–24, 27–28.) The court heard evidence on the deadly weapon allegations and sentencing in a joint hearing held on October 2 and October 13, 2017. (Dkt. ##20-38, 20-39.) It made an affirmative finding of the use or exhibition of a deadly weapon in each case and sentenced Petitioner to fifty years in prison for each conviction, to run concurrently. (Dkt. #20-39 at 26–27; Dkt. #20-26 at 76;  Dkt. #20-27 at 61.)

Petitioner appealed the denial of his motions to suppress, and the Court of Appeals for the Twelfth Court of Appeals District in Tyler, Texas affirmed in September 2018. (Dkt. #20-1.) The Texas Court of Criminal Appeals denied discretionary review on February 27, 2019. (Dkt. #20-13.) Petitioner's two state applications for writ of habeas corpus were denied without written order on January 27, 2021, and October 28, 2021. (Dkt. ##20-41, 20-45.) These federal petitions followed, and Respondent concedes that they are timely. (Dkt. #21 at 6.)

Facts

The Twelfth Court of Appeals summarized the basic facts underlying Petitioner's convictions as follows:

> On January 5, 2017, Detective Logan Smith of the Smith County Sheriff's Office initiated a traffic stop on Appellant because a computer check on the vehicle's license plates showed expired registration. After stopping Appellant, however, Smith observed that the registration sticker on the front windshield indicated that the vehicle's registration was not expired. Smith performed a computer check on the sticker and learned that it belonged to another vehicle. Smith arrested Appellant for displaying the wrong registration insignia, and during a search of Appellant's person incident to the arrest, he found a large bag of methamphetamine. Based on this incident, Appellant was charged by indictment with manufacture or delivery of a controlled substance in penalty group 1, specifically by possessing four grams or more but less than two hundred grams of methamphetamine with intent to deliver.
>
> On February 7, 2017, Tyler Police Officer Steve Black stopped to talk to Appellant and two other people standing at a car wash. When Black asked about a U-Haul vehicle parked in one of the bays, Appellant said he was taking it from Bullard to Lake Palestine. After obtaining Appellant's identification, Black determined that he had a parole violation warrant. When Black attempted to arrest Appellant, he fled on foot but was apprehended a short time later. After Appellant was placed in custody, Black asked Officer John Holland to check out the U-Haul vehicle. Upon looking through the vehicle's windows with a flashlight, Holland saw a bag of methamphetamine and the muzzle end of a handgun. Surveillance video confirmed that Appellant was the driver of the vehicle. Based on this incident, Appellant was charged . . . with . . . manufacture or delivery of a controlled substance in penalty group 1, specifically by possessing two hundred grams or more but less than four hundred grams of methamphetamine with intent to deliver.
>
> After the trial court denied his motions to suppress, Appellant pleaded "guilty" to the charges. The trial court assessed his punishment at . . . fifty years in each of the controlled substance cases. This appeal followed.

(Dkt. #20-1 at 1–2.)

Claims for Relief

Petitioner originally raised seven grounds for relief, which Respondent organized as follows, without correction or objection from Plaintiff, with the "A" set of claims pertaining to the February case, and the "B" set pertaining to the January case:

A1. Petitioner's Fourth Amendment rights were violated by an unreasonable stop;

3

    A2. Ineffective assistance of appellate counsel for failing to challenge the constitutionality of the stop;

    A3. Ineffective assistance of trial counsel for failing to investigate and learn that the stop was unconstitutional;

    A4. Ineffective assistance of appellate counsel for failing to challenge the sufficiency of the evidence to sustain the deadly weapon finding.

    B1. Insufficient evidence to support the deadly weapon finding;

    B2. Ineffective assistance of trial counsel for failing to present evidence and cross-examine a state's witness to establish that no weapon was actually used; and

    B3. Ineffective assistance of appellate counsel for failing to challenge the sufficiency of the evidence to sustain a deadly weapon finding.

<u>Motion to Amend</u>

Respondent asserts in his answer that several of Petitioner's original claims are procedurally defaulted due to his failure to exhaust them properly in state court. (Dkt. #21 at 6, 11–16.) In response to that assertion, Petitioner concedes the point and moves to amend his petition to "remove" those claims. (Dkt. #29.) Specifically, those claims are:

    A3. Ineffective assistance of trial counsel for failing to investigate and learn that the stop was unconstitutional;

    B1. Insufficient evidence to support the deadly weapon finding; and

    B2. Ineffective assistance of trial counsel for failing to present evidence and cross-examine a state's witness to establish that no weapon was actually used.

(Dkt. #21 at 2, 6; Dkt. #29 at 1.)

Additionally, Petitioner moves to drop the following claims from his petition:

    A1. Petitioner's Fourth Amendment rights were violated by an unreasonable stop; and

    A4. Ineffective assistance of appellate counsel for failing to challenge the sufficiency of the evidence to sustain the deadly weapon finding.

(Dkt. #21 at 2; Dkt. #29 at 1–2.)

Federal habeas petitions "may be amended or supplemented as provided in the rules of

4

procedure applicable to civil actions." 28 U.S.C. § 2242. Rule 15 of the Federal Rules of Civil Procedure provides that, if more than 21 days have elapsed since service of a responsive pleading, a plaintiff "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). It also dictates that "[t]he court should freely give leave when justice so requires." *Id.*

In this case, Respondent did not provide written consent for Petitioner's amendment, but he has not opposed the motion. Petitioner's motion is not brought in bad faith or with any undue delay or dilatory motive. *See Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (discussing factors to consider in ruling on motion to amend). Moreover, it is a "well-established principle that 'the plaintiff is the master of [his] complaint.'" *Durbois v. Deutsche Bank Nat'l Tr. Co. as Tr. of Holders of AAMES Mortg. Inv. Tr. 20054 Mortg. Backed Notes*, 37 F.4th 1053, 1060 (5th Cir. 2022) (quoting, inter alia, *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002)). As such, Petitioner has "the power to raise the claims that he wishes to pursue and omit those that he does not wish to pursue." *Morris v. Administrators of Tulane Educ. Fund*, No. CIV. A. 95-860, 1995 WL 368491, at *1 (E.D. La. June 20, 1995) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also In Int. of J.B.R.*, No. 4:07-CV-354-Y, 2007 WL 9718290, at *1 (N.D. Tex. Oct. 9, 2007) (as "master of his complaint," a plaintiff is "free to raise the claims he wishes to pursue and omit those he wishes to forsake" (citing *Anderson v. American Airlines*, 2 F.3d 590, 593 (5th Cir. 1993))). If Petitioner has elected to drop certain claims for whatever reason he deems fit, the Court should not second-guess that decision.

Accordingly, the undersigned will recommend that the motion to amend be granted and will proceed to review the remaining claims on their merits below.

## Standard of Review

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (citations omitted); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

Review of the petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "By its terms § 2254 bars re-litigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted).

With respect to the first provision, a "state court decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). As such, "evidence later introduced in federal court is irrelevant." *Id.* at 184. "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).

For the purposes of section 2254(d)(2), a Texas court's factual findings are presumed to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing section 2254(e)(1)). The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief." *Id.* (citation and internal quotation marks omitted). The Supreme Court has held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citation omitted). The Supreme Court has also explained that the provisions of AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas corpus relief is not available just because a state court decision may have been incorrect; instead, a petitioner must show that a state court decision was unreasonable. *Id.* at 694.

7

Discussion and Analysis

1. Claim A2 – Ineffective assistance of appellate counsel for failing to challenge the constitutionality of the February stop

Petitioner asserts that his "consen[s]ual encounter" with Officer Black actually became an unconstitutional detention when Black requested Petitioner's ID, rendering the warrantless search of Petitioner's U-Haul unconstitutional. (Dkt. #1 at 6.) He claims that appellate counsel was ineffective for failing to raise this claim on direct appeal. (*Id.*)

Appellate counsel did appeal the denial of his motion to suppress the evidence found in the U-Haul on different grounds (Dkt. #20-3 at 11–15), and the proceedings on that claim are relevant to this one. The Twelfth Court of Appeals summarized the relevant facts and the parties' positions as follows:

> On February 7, 2017, Tyler Police Officer Steve Black stopped to talk to Appellant and two other people standing at a car wash. When Black asked about a U-Haul vehicle parked in one of the bays, Appellant said he was taking it from Bullard to Lake Palestine. After obtaining Appellant's identification, Black determined that he had a parole violation warrant. When Black attempted to arrest Appellant, he fled on foot but was apprehended a short time later. After Appellant was placed in custody, Black asked Officer John Holland to check out the U-Haul vehicle. Upon looking through the vehicle's windows with a flashlight, Holland saw a bag of methamphetamine and the muzzle end of a handgun. Surveillance video confirmed that Appellant was the driver of the vehicle.
>
> . . .
>
> At the suppression hearing, Officer Holland testified that he looked through the passenger's side window of the U-Haul with a flashlight and saw a partially open backpack. Inside the backpack, he could see a Ziploc bag containing a substance he believed to be methamphetamine. He then looked through the driver's side window and saw the muzzle end of a handgun. Holland was aware that Appellant had a parole violation warrant and was therefore a convicted felon. Holland eventually entered the vehicle and retrieved the contraband.
>
> On cross-examination, defense counsel questioned Officer Black and Officer Holland regarding how many officers were involved with the case that night. Black testified that "probably quite a few" officers were at the scene, but could not say who or how many were there. Holland testified that he remembered seeing seven specific officers at the scene, including himself. Defense counsel further questioned the officers regarding the police department's vehicle search policy. Apparently reading from the policy, defense counsel stated, "When practical, and if the imminent destruction or removal of property appears unlikely, a search warrant should be obtained if necessary and practical. And

> [sic] officer may guard the property until a search warrant can be executed." Black responded, "Okay," and acknowledged that no search warrant was obtained before Holland entered the vehicle.
>
> In its closing argument, the State argued that the warrantless search was lawful under both the plain view exception and the automobile exception. In his closing argument and the written motion to suppress, defense counsel argued that the search was unlawful because no exigent circumstances existed and the police department's guidelines were violated. The trial court denied the motion to suppress, concluding that "[t]he search of [Appellant's] U-Haul truck was valid and supported by Officer Holland's plain view observation of evidence that a crime was being committed[.]"
>
> On appeal, Appellant argues that the evidence found in the U-Haul vehicle should be suppressed because the search was unreasonable. He contends that the search was unreasonable because twelve police officers were involved in the case and the police department's policy recommends obtaining a warrant before searching a vehicle. Appellant further argues that the plain view exception to the warrant requirement does not apply because it was not immediately apparent that the tip of the handgun was contraband.

(Dkt. #20-1 at 2, 4–5.)

The Twelfth Court of Appeals found that the plain view exception did not apply to the search of the U-Haul as a matter of state law, but it affirmed denial of the motion to suppress based on the automobile exception:

> [L]ike the police in *Keehn* [*v. State*, 279 S.W.3d 330 (Tex. Crim. App. 2009)], Officer Holland had a lawful right to enter the U-Haul under the automobile exception. *See id.* at 336. Under the automobile exception, law enforcement officials may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband. *Id.* at 335. Here, the record supports a finding that the U-Haul vehicle was readily mobile. Appellant told Officer Black that he was taking the vehicle from Bullard to Lake Palestine, and the surveillance video showed the vehicle driving into the car wash. Furthermore, the record supports a finding that Officer Holland had probable cause to believe the vehicle contained contraband. Holland testified that he observed a substance that appeared to be methamphetamine in a Ziploc bag and the "very pronounced and obvious muzzle end of a 1911 pistol." Moreover, while Holland was en route to the scene, Black informed him that Appellant had a parole violation warrant, thus apprising Holland of the fact that Appellant was a convicted felon. We conclude that the search and seizure were lawful under the automobile exception. *See id.* at 336.
>
> Furthermore, Appellant cites no authority for the proposition that the violation of a police department's policy renders a search and seizure unlawful under the Fourth Amendment. See TEX. R. APP. P. 38.1(i) (requiring brief to contain clear and concise argument with appropriate citations to authorities). Consequently, we conclude that this

9

argument is without merit, and that the trial court did not abuse its discretion by denying the motion to suppress the evidence found in the vehicle. Accordingly, we overrule Appellant's first issue in Cause Nos. 12-17-00321-CR and 12-17-00322-CR.

(*Id.* at 5–6.)

Petitioner now claims that counsel should have premised a challenge to the U-Haul search on the alleged unconstitutionality of his own detention and that counsel was ineffective for failing to do so. (Dkt. #1 at 6.) Federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing Petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive Petitioner of a fair trial. *Id.* at 687. To meet the first prong, Petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* at 688–89. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

It is well established that "[a]ppellate counsel need not raise every nonfrivolous appellate issue, but should instead select issues that will maximize the likelihood of success on appeal." *United States v. Redd*, 619 F. App'x 333, 337 (5th Cir. 2015). Accordingly, to prevail on an ineffective–assistance claim regarding appellate counsel's conduct, where "counsel files a merits brief, a defendant generally must show that 'a particular nonfrivolous issue was clearly stronger than issues counsel did present.'"

*Dorsey v. Stephens*, 720 F.3d 309, 320 (5th Cir. 2013) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

As discussed above, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. §§ 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

Petitioner raised this ineffective-assistance claim in his state habeas corpus application. (Dkt. 1-1 at 3; Dkt. #20-47 at 16–23.) Petitioner's direct appeal attorney, James Huggler, testified in state court by affidavit about this claim:

> Turning to Mr. Jerger's second factual allegation that the motion to suppress should have been granted because the stop was not justified at inception. The testimony during the [suppression] hearing was that a Tyler officer saw a U-Haul truck parked in a car wash and people who did not appear to be washing cars [o]r vacuuming. The officer had been asked by the business owner to patrol that business because of prior burglaries. This was a consensual encounter at inception. The officer was able to identify Mr. Jerger and he had been briefed that Mr. Jerger had a parole warrant outstanding. Mr. Jerger

11

> then ran from the location. In my professional opinion, Mr. Jerger's theory was not supported by the record in the case, the trial court findings of fact, or the law.
> . . .
> Mr. Jerger does not appear to understand that the vast majority of procedural suppression cases involve inventory searches. That was not the case with these facts. This was not an inventory search. The trial court found that this was a plain view exception and denied the suppression. The Court of Appeals determined that this was a valid search pursuant to the automobile exception.

(Dkt. #20-48 at 50–51 (internal citations omitted).) The trial court made findings of fact and conclusions of law and recommended denial of the application. (Dkt. #20-48 at 1.) Specifically, the trial court accurately summarized the *Strickland* standard for ineffective-assistance claims and then made the following findings and conclusions about Petitioner's claim:

> b. Applicant alleges he received ineffective assistance of counsel based on the failure to argue that the motion to suppress should have been granted because the initial seizure was not supported by probable cause or reasonable suspicion.
>    i. Not every encounter between a citizen and a police officer amounts to a seizure.
>    ii. The arrest in this case began as a consensual encounter, with an officer initiating a casual conversation with people at a carwash that was open to the public.
>    iii. Applicant was not seized at the outset of his encounter with Officer Steve Black.
>    iv. Applicant has not demonstrated that appellate counsel's decision not to raise this point of error was objectively unreasonable. Applicant did not receive ineffective assistance of counsel on this basis.

(Dkt. #20-48 at 71, 72–73 (internal citations omitted).) The Texas Court of Criminal Appeals denied the application "without written order on findings of trial court without hearing and on the court's independent review of the record." (Dkt. #20-45.)

Petitioner asserts that the state court's rejection of his ineffective-assistance claim was unreasonable because Officer Black's obtaining his ID "created a legal detention," and the state court unreasonably gave "a false impression that 'consen[s]ual encounter' progressed to arrest without any intermediate detention." (Dkt. #1 at 6.) He bases this claim on the assertion that when "Black then asked for ID, at that point it changed from consensual encounter to a investigative detention" and

12

"[o]btaining ID's created a detention." (Dkt. #1-1 at 7; Dkt. #30 at 5.) But that theory, even if true, would not disprove the state court's finding that the incident "began" as a consensual encounter. And once such an encounter is under way, "a police officer is free to ask a person for identification without implicating the Fourth Amendment." *Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 185 (2004).

It is undisputed that once Petitioner was identified as someone with an outstanding warrant (and once he fled the scene), he was, in fact, arrested. Petitioner does not suggest or explain how any effort to detain and arrest him based on the outstanding warrant was unreasonable. Moreover, the Twelfth Court of Appeals found on direct appeal that the U-Haul search was constitutional based on the automobile exception, which does not include as one of its factors any independent detention of the driver. Accordingly, there is nothing to suggest that Petitioner's proposed claim was stronger than the claims counsel raised on direct appeal or that his raising this claim would have made a reversal reasonably likely.

Finally, the Court reiterates that the central question under AEDPA is not whether counsel's performance failed the *Strickland* test, but whether the state court's determination that it did not was so unreasonable that it was "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. This habeas standard for ineffective-assistance claims is "doubly deferential," and "is hard to meet 'because it was meant to be.'" *Anaya v. Lumpkin*, 976 F.3d 545, 557 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2703 (2021) (quoting *Harrington*, 562 U.S. at 102). Petitioner does not satisfy that standard with respect to this claim and is not entitled to relief under AEDPA.

    2. Claim B3 – Ineffective assistance of appellate counsel for failing to challenge the sufficiency of the evidence to sustain a deadly weapon finding in the January case

As explained above, Petitioner pleaded "not true" to the deadly weapon allegation in the January case, and the trial court heard evidence on the matter before making its affirmative finding. Smith County Detective Logan Smith testified at the hearing that, contemporaneous to his arrest of Petitioner, he found "a large knife in the driver's seat of the vehicle where Jerry Jerger was sitting," in addition to the narcotics that were the basis of his indictment. (Dkt. #20-38 at 9–10.) He testified that, in his experience, a knife was capable of causing death or serious bodily injury and that people in possession of large amounts of narcotics also possess weapons to protect themselves, the narcotics, and the money obtained in exchange for the narcotics. (*Id.* at 15–17.) He agreed that possessing a knife while possessing methamphetamine with intent to deliver methamphetamine "[a]bsolutely" served to protect methamphetamine. (*Id.* at 17.) On cross-examination, Smith agreed that almost anything, including a tire jack found in most cars, could be a deadly weapon. (*Id.* at 18.)

Petitioner claims that appellate counsel was ineffective for not contesting on direct appeal the trial court's finding that the knife found with Petitioner when he was stopped was a deadly weapon where there was no evidence that he had actually used it. (Dkt. #11 at 7.) He raised this issue in his state habeas petition (Dkt. #20-44 at 34), which was denied without written opinion. (Dkt. #20-41.)

Appellate counsel testified by affidavit in state court about his reasons for not raising Petitioner's proposed claim:

> Mr. Jerger raises an issue that I provided ineffective assistance of appellate counsel for failing to challenge the legal sufficiency of the deadly weapon finding in the case. He states that a legal sufficiency challenge does not have to be preserved by objection, that a knife is not a deadly weapon per se, and that the evidence did not support the conclusion that the knife was a deadly weapon by design, or was used as a deadly weapon.
>
> In this case, the State included in the indictment an allegation that a knife was used as a deadly weapon. Mr. Jerger entered a plea of Not True to that allegation when he entered the plea of guilty. VII RR 23·24. Smith County Sheriffs Deputy Logan Smith testified

14

during the sentencing phase of trial. VIII RR 7. On January 5, 201 7, he conducted a traffic stop on a vehicle and identified the driver as Jerry Jerger. VIII RR 8·9. His opinion was that Mr. Jerger was nervous and moving around, and Logan asked him to step out of the vehicle. Mr. Jerger was seated in the front seat of Logan's patrol car. VIII RR 9. Jerger was placed under arrest for the traffic offense, and Deputy Logan conducted a search incident to arrest of the interior of the Dodge Ram truck. VIII RR 9. He located a large knife where Mr. Jerger was sitting and narcotics from his person. VIII RR 9·10, State's Exhibit 5. Mr. Jerger was the only occupant of the truck where the knife was located. VIII RR 14. The deputy testified that the knife was able to cause death or serious bodily injury. VIII RR 15. Deputy Logan further testified that, in his training and experience, people who carry large amounts of narcotics possess weapons, including knives, to protect their interest in the narcotics, any currency they are carrying, and their persons. VIII RR 15·17.

Following the conclusion of evidence, and argument of counsel, the trial court made an affirmative finding that the knife was a deadly weapon. IX RR 21, 26·27.

While Mr. Jerger is correct in the belief that not every knife is a deadly weapon, he is not correct in my deciding not to raise that as an issue was ineffective. Previously, courts have held that partial exposure of a knife was sufficient to support a deadly weapon finding. *McCain v. State*, 22 S.W.3d 497 (Tex. Crim. App. 2000). Courts have also found that the deadly weapon allegation was not supported by the evidence when no person testified about the knife and it was not introduced into evidence. *Davidson v. State*, 602 S.W.2d 272 (Tex. Crim. App. [Panel 1], 1980). Most cases involving an analysis of whether or not a knife is a deadly weapon are based on underlying charges of aggravated assault or robbery. There are also enough cases relating a deadly weapon to a possession or other narcotics charge that raising the issue that a deadly weapon could not be found in a narcotics case would affect the credibility of the briefs other issues.

This case was similar to *Rosas*, where a knife was found to be a deadly weapon when it was found in a car's floor area during an arrest for narcotics. *Rosas v. State*, 373 S.W.3d 738 (Tex. App. - San Antonio 2012).

Mr. Jerger also wrote me several times, two letters specifically concerned the knife as a deadly weapon issue. On January 26, 2018, he wrote regarding the deadly weapon finding. I answered him on February 12, 2018 and did convey the information that there was no objection to the trial court's finding regarding either deadly weapon, and that there had been testimony supporting the deadly weapon finding. On February 17, 2018, he wrote that he wished I had tried. I responded on February 26, 2018 and informed him that I raised the issues that I believed were supported by the facts in the record and the law. In this case, challenging the deadly weapon finding was not supported by the facts or the law.

While it is true that legal sufficiency can be raised on direct appeal without an objection, that does not presume that every issue which can be raised, should be raised in a brief. In each of Mr. Jerger's three cases, the primary issue was the search. Appellate counsel has extensive experience with the Twelfth Court of Appeals, as well as several other courts of appeal. The Twelfth Court of Appeals, historically, has bene [sic] the least

> likely of any of the courts to reverse for legal sufficiency grounds. Counsel looked at the issue, determined that, in his professional opinion, the issue would not be successful at the Twelfth Court of Appeals, and that this would not be the type of case or facts which would cause interest at the Court of Criminal Appeals. Given the record in the case, the findings made by the trial court, and the standard of review, this issue was not raised because it was not supported by the record or the law.

(Dkt. #20-44 at 88–91.)

An informed strategic decision by counsel is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Courts reviewing counsel's choices in the relative calm of later judicial review must not allow "the distorting effects of hindsight" to lead to a determination that a decision was unreasonable simply because it "has proved unsuccessful." *Id.* at 689. Accordingly, "[i]nformed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999)). "A conscious and informed decision on . . . strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire [proceeding] with obvious unfairness." *Id.* (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)).

However, Petitioner disputes counsel's account of why he did not raise this claim. Petitioner relies on a contemporaneous letter from counsel in which counsel advised that "[a] knife can be found to be a deadly weapon, and there was testimony that it could have been used to facilitate the narcotics possession" but went on to state that "[t]here was no objection made to these findings at the trial which was why I did not raise that issue in the briefs." (Dkt. #20-44 at 77 (emphasis added); Dkt. #30 at 47; Dkt. #30-1 at 7.) In counsel's later affidavit quoted above, he acknowledges that the lack of objection would not have prevented consideration of the deadly weapon issue on appeal and focuses on other reasons for choosing not to raise it. But the contemporaneous letter does raise a question about whether counsel's mistake of law prevented him from making a truly strategic decision about this claim.

The first *Strickland* prong is objective and not necessarily dependent on counsel's subjective

16

understanding, but the amount of deference due to counsel's choices is proportional to the amount of reasonable preparation that went into making them. *See Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Nevertheless, it unnecessary to resolve this dispute about the objective reasonableness of counsel's decision, because Plaintiff's claim fails on the second *Strickland* prong. *See Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) (explaining that a petitioner's "*Strickland* claim fails if he cannot establish either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either").

Petitioner fails to demonstrate any prejudice arising from counsel's decision not to raise this claim. Texas law makes a defendant ineligible for judge-ordered community supervision if he used or exhibited a deadly weapon during the commission of or immediate flight from a felony offense. Tex. Code Crim. Proc. Ann. art. 42A.054(b). For the purposes of this statute, a deadly weapon includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B). And "using a deadly weapon during the commission of a felony offense extend[s] to 'any employment of a deadly weapon, even its simple possession, if such possession facilitates the associated felony.'" *Davis v. State*, 614 S.W.3d 223, 232 (Tex. App. 2020) (quoting *Safian v. State*, 543 S.W.3d 216, 223–24 (Tex. Crim. App. 2018)).

Petitioner correctly asserts that a knife is not a deadly weapon per se, *see Davis v. State*, 614 S.W.3d 223, 231 (Tex. App. 2020), and he argues that there was insufficient evidence to establish that his knife was a deadly weapon because it was not entered into evidence and "[t]here was no testimony as to any physical characteristics [sic] of the knife." (Dkt. #30 at 36, 40.) But Detective Smith described

the knife, both in his written report and his testimony as "large." (Dkt. #20-27 at 20; Dkt. #20-38 at 9.) And the prosecution entered into evidence a photograph of the knife where it was found in the driver's seat of the vehicle Petitioner was driving. (Dkt. #20-38 at 13–14; Dkt. #20-40 at 20.) Accordingly, the trial court had a visual image of Petitioner's knife as well as Detective Logan's cursory description on which to base its conclusion that the knife was a deadly weapon. Moreover, the photograph in question is in record and confirms that the knife is indeed what appears to be a "large," fixed-blade tactical knife of some sort in a sheath. (Dkt. #20-40 at 20.)

Petitioner also argues that there was no evidence that he used the knife as a deadly weapon. (Dkt. #11 at 7; Dkt. #30 at 38.) But that is only true in a limited sense of the word "use," in that there is no evidence that Petitioner actually harmed or threatened anyone with the knife. Detective Smith testified that possession of a knife facilitates drug crimes by providing protection for the dealer, the drugs, and the proceeds from drug sales. (Dkt. #20-38 at 15–17.) Even in the absence of an admission by Petitioner of his reasons for possessing the knife, Smith's testimony and the fact that Petitioner kept the knife nearby as he was transporting the narcotics are circumstantial evidence supporting the trial court's finding. For these reasons, Plaintiff's arguments do not establish a reasonable likelihood that his proposed claim would have prevailed on appeal if counsel had raised it.

And finally, the Court remains mindful that the standard applicable to this claim is doubly-deferential, and it is reviewing not counsel's performance but the Texas court's determination that the performance was not ineffective. While Petitioner's assertions that the knife was just a "regular" knife he used as an electrician (Dkt. #11 at 6; Dkt. #30 at 35) might make the outcome of his claim debatable in some minds, it does not make the state court's decision unreasonable. The same is true for Petitioner's assertion that appellate counsel's decision not to raise this claim was really based on his inaccurate belief that a challenge to the deadly weapon finding had been waived. (Dkt. #30 at 26.)

18

Petitioner has thus not established that the state court's rejection of this claim was so objectively wrong as to be beyond fairminded disagreement, as required to merit federal habeas relief. *Harrington*, 562 U.S. at 101. Petitioner is not entitled to relief on this claim.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, the petitioner must make a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). To do this, he must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the prisoner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists reviewing this case could not disagree that the Texas courts reasonably rejected Petitioner's remaining claims. Accordingly, the Court should deny a certificate of appealability.

## RECOMMENDATION

The undersigned accordingly recommends that Petitioner's motion to amend (Dkt. #29) be granted, a writ of habeas corpus be denied, the consolidated actions be dismissed with prejudice, and that a COA be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

So ORDERED and SIGNED this 2nd day of August, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE